No. 23-4027

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

Appellee,

v.

RICHARD GRIER,
a/k/a Rich Homie,

Appellant.

*Appeal from the United States District Court for the
District of Maryland, Northern Division
The Honorable James K. Bredar, Chief District Judge*

INFORMAL BRIEF OF APPELLEE
UNITED STATES OF AMERICA

Erek L. Barron
United States Attorney

Brandon K. Moore
Patricia C. McLane
Assistant United States Attorneys

36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800

June 5, 2023                    *Attorneys for the Appellee*

## STATEMENT OF THE ISSUES

1.     Whether this appeal should be dismissed under a knowing and voluntary guilty plea and appeal waiver.

2.     Whether the district judge plainly erred by accepting a plea agreement when the Appellant personally negotiated it, he confirmed on the record that he understood it, and he entered it freely and voluntarily.

3.     Whether the magistrate judge acted appropriately when it followed the law and standard practice to channel discovery through standby counsel.

## STATEMENT OF THE FACTS

**A.     Background**

Appellant Richard Grier was a member of Cruddy Conniving Crutballs ("Triple C"), a violent group based in Baltimore, Maryland.  ECF No. 1059, at 10 (Plea Agreement).  While in Triple C, Grier committed at least three murders and two attempted murders, including the murder of Vuia Green.  *Id.* at 10–11.

In August 2018, Grier approached Vuai Green and shot him multiple times, including once in the back of the head.  *Grier v. State*, 2021 WL 423469, at *1 (Md. Ct. Spec. App. Feb. 8, 2021).  The following year, a Baltimore jury convicted Grier of first-degree murder and using a firearm during the commission of a felony.  *Id.* Grier received life imprisonment for the murder, plus 20 years concurrent for using the firearm.  *Id.  See also* ECF No. 1134, at 34 (Guilty Plea Transcript); ECF No. 1137, at 11 (*Lafler/Frye* Transcript).  Grier remained in state custody, serving that

sentence, during the pendency of the federal proceedings. *See* ECF No. 358 (Interstate Agreement on Detainers).

Separately, a federal grand jury charged Grier with, among other things, conspiring to participate in a racketeering enterprise ("RICO conspiracy") in violation of 18 U.S.C. § 1962(d). ECF No. 608 (Second Superseding Indictment). The district judge appointed Christopher Purpura to represent Grier in his federal case. ECF No. 77 (Order Appointing Counsel).

## B.    Grier Waived His Right to Counsel.

During the federal case, Grier made two *pro se* requests for personal copies of the discovery. *See* ECF No. 768 (Motion to Receive Discovery Files); ECF No. 830 (Motion to Compel Attorney to Produce Client's File). Because Grier did not make the requests through Mr. Purpura, the district judge denied them. ECF No. 998 (Order). Grier then moved to represent himself. ECF No. 1009 (*Pro Se* Defendant Entry of Appearance).

On December 19, 2022, a magistrate judge held a *Faretta* hearing. *See Faretta v. California*, 422 U.S. 806, 835 (1975) (requiring the defendant to be told "the dangers and disadvantages of self-representation" on the record). During the *ex parte* portion of the hearing, Grier could articulate no issue with the discovery or Mr. Purpura. Instead, he maintained his innocence. ECF No. 1148, at 19 (*Faretta* Transcript). And he claimed that, in *Grier v. State*, he believed that his state defense

2

attorney, the state prosecutor, and the state court had colluded to secure his conviction. *Id.* at 28. Nothing like that had happened in the current federal case, but Grier wanted to represent himself anyway. *Id.* at 28–29. He wanted a copy of the discovery to prepare his own research and defense. *Id.* at 30, 39.

The magistrate judge explained to Grier that "the Court is highly protective of a person's Sixth Amendment rights to the assistance of counsel. It's a constitutional right you have, and I have to be satisfied that you have a full understanding of the disadvantages of letting counsel go." *Id.* at 27.

The magistrate judge then walked Grier through the disadvantages.

On the one hand, racketeering trials are complicated. *Id.* at 23. A self-represented defendant may lack sufficient understanding of the law, rules of criminal procedure, and rules of evidence. *Id.* His objections may fail. *Id.* at 25. He might miss opportunities to make objections. *Id.* He might know that certain evidence exists, but he might not know if or how that evidence is admissible. *Id.*

On the other hand, a defense attorney would be familiar with the statutes defining the charged offenses, which would inform the strategy for the motions hearing and trial. *Id.* at 33. An attorney would devise a strategy for selecting the jury. *Id.* at 34. An attorney would know what jury instructions to advocate for, the issues to preserve for appeal, and the arguments for reversible error. *Id.* at 33–34. Grier confirmed that he understood those disadvantages. *Id.* at 23, 26, 33–34.

3

During the public portion of the hearing, the magistrate judge repeated the disadvantages. *Id.* at 42–46. Grier again confirmed that he understood them. *Id.* The magistrate judge also said that Grier would be responsible for jury selection, the opening statement, the closing argument, presenting evidence, and cross-examining witnesses. *Id.* at 46–47. Grier had to follow the rules of criminal procedure and evidence, and the court could not give him legal advice or assist in presenting his defense. *Id.* at 42, 47. Grier confirmed that he understood those points, too. *Id.* at 42, 46–47.

Importantly, the magistrate judge made clear—several times—that there was no rush:

> THE COURT:     Another thing you could think about, if some of this is things you're hearing for the first time, you don't have to make a decision on this today. There's lots of time available between now and your trial for you to think about what I'm saying to you and to consider it carefully before you dismiss Mr. Purpura or before you ask the Court to dismiss Mr. Purpura.
>
> Do you understand that?
>
> THE DEFENDANT:     Yes, Your Honor.

*Id.* at 36. *See also id.* at 41 ("Have you had time to consider whether you want to exercise your right to counsel or represent yourself in this case?"); *id.* at 48 ("you have more than adequate time to reconsider it").

Finally, the magistrate judge confirmed that the waiver of his Sixth Amendment right was intelligent and voluntary:

> THE COURT:     In light of all that I've said here, I pose the question to you: Will you choose to exercise your right to counsel in this case?
>
> THE DEFENDANT:     No.
>
> THE COURT:     So then will you waive your right to counsel in this case?
>
> THE DEFENDANT:     Yes.
>
> THE COURT:     One moment.    Has anyone forced or threatened you to get you to waive your right to counsel in this case?
>
> THE DEFENDANT:     No.
>
> THE COURT:     Are you waiving your right to counsel freely and voluntarily?
>
> THE DEFENDANT:     Yes.
>
> THE COURT:     Are you waiving your right to counsel knowingly and intelligently?
>
> THE DEFENDANT:     Yes.

*Id.* at 48–49.

Following that lengthy inquiry, the magistrate judge let Grier represent himself. *Id.* at 50.  Now self-represented, Grier renewed his *pro se* discovery request. ECF No. 1051 (Motion to Receive Discovery Files).  And the Government voiced

5

its concern with giving Grier personal copies: "Obviously, there's a lot of witnesses and safety concerns in terms of that."  ECF No. 1148, at 51(*Faretta* Transcript).

## C.    Grier Negotiated His Own Plea Agreement.

On January 6, 2023, the same magistrate judge held a *Lafler*/*Frye* hearing. *See Missouri v. Frye*, 566 U.S. 134, 146 (2012) (explaining that "formal offers can be made part of the record . . . before a trial on the merits" to "ensure that a defendant has been fully advised before those further proceedings commence").  Mr. Purpura attended the hearing.  ECF No. 1137, at 3 (*Lafler*/*Frye* Transcript).

The Government, in Grier's presence, explained that, because Grier was incarcerated, it had sent Grier a written plea offer three days earlier by emailing it to Mr. Purpura.  *Id.* at 8.  Under that offer, Grier would have pled guilty to the RICO conspiracy, and the Government would have recommended a sentence no longer than 20 years concurrent to his sentence in *Grier v. State*.  *Id.* at 9, 11.  Before discussing any other matter, Grier personally tried to make a counteroffer on the spot: "I got a recommendation for a sentence."  *Id.* at 14.

Before addressing the counteroffer, though, the magistrate judge appointed Mr. Purpura as standby counsel and denied Grier's renewed discovery request.  *Id.* at 15–17.  As the magistrate judge explained, "for various reasons including safety concerns, it is the policy of this Court not to permit discovery files . . . in facilities of incarceration to include any state prison and include any pre-trial detention

6

facility." *Id.* at 16–17. The magistrate judge continued, "you can't have personal possession of those documents as long as you are incarcerated." *Id.* at 17. Although Grier was "in the driver's seat" and "making all of the decisions," Mr. Purpura, as standby counsel, was "the channel through which you receive discovery." *Id.* at 15–16.

The magistrate judge assured Grier that he would have ample opportunity to review the discovery to prepare for a motions hearing or trial. *Id.* at 17. The magistrate judge also offered to move Grier to a facility closer to the courthouse to have easier access to Mr. Purpura and the discovery. *Id.* at 17–18.

Grier did not object to viewing discovery through standby counsel. He simply asked to remain at his current facility. *Id.* at 18. Even then, the magistrate judge inquired about moving Grier anyway: "I understand that you may have reasons to want to go back to [state custody] but you have to weigh whatever those reasons are against your ability to prepare for this case, which is very serious." *Id.* at 21.

Grier then returned to his counteroffer:

THE DEFENDANT:    I take the [15] years –

*    *    *

THE COURT:    Okay. So when you say 15 years, just so we are all clear now that I am part of the conversation. When you say 15 years, you are talking about the Government capping its recommendation at 15 years rather than 20?

> THE DEFENDANT:    Yes.
>
> THE COURT:    So everything else in the plea offer would stay the same?  You would just propose that 15 years be put in there instead of the 20 years?
>
> THE DEFENDANT:    Yes.

*Id.* at 25–26.  To be sure, the magistrate judge did not involve itself in the negotiation itself, but made sure that the Government understood Grier's counteroffer and that his position was stated clearly for the record.  *See id.* at 27.

**D.    Grier Waived the Right to Appeal is Conviction.**

After the hearing, and outside the presence of any judge, the Government accepted Grier's counteroffer and the parties executed a revised agreement.  In the revised agreement, the Government agreed to recommend a sentence no longer than 180 months (15 years).  ECF No. 1059, at 6 (Plea Agreement).  In exchange, Grier agreed to plead guilty to the RICO conspiracy, and he acknowledged that he "knowingly *waive[d] all right*" to "*appeal the Defendant's conviction on any ground whatsoever.*"  *Id.* at 6 (emphasis added).  The waiver had no exceptions.

Grier signed the revised agreement.  In doing so, he affirmed that he "read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it.  I understand it and I voluntarily agree to it."  *Id.* at 9.

E.    **The Guilty Plea Hearing.**

1.    **Grier Was Satisfied with Counsel.**

About an hour after the *Lafler*/*Frye* hearing, the parties appeared before the district judge for a combined guilty plea and sentencing hearing.  At Grier's request, the district judge appointed Mr. Purpura to represent him for the purposes of the hearing.  ECF No. 1134, at 2–3 (Guilty Plea Transcript).  Under oath, Grier confirmed that he was satisfied with Mr. Purpura's representation:

> THE COURT:      Are you fully satisfied with the legal representation that you've received from him?
>
> THE DEFENDANT:      Yes.
>
> THE COURT:      Do you believe your lawyer's given you good advice?
>
> THE DEFENDANT:      Yes.
>
> THE COURT:      Do you believe that your lawyer has been a zealous and effective legal advocate on your behalf?
>
> THE DEFENDANT:      Yes.

*Id.* at 9–10.

2.    **The Plea Was Free and Voluntary.**

At every stage, the district judge took great care to ensure that Grier was pleading guilty freely and voluntarily.  Grier confirmed under oath that he was pleading guilty of his "own free will because [he was] guilty."  *Id.* at 16.  He also

9

confirmed under oath that nobody "made any threats or used any force or violence" to persuade him to plead guilty. *Id.* 13–14.

At some point, Grier denied being part of Triple C. *Id.* at 5. In response, the district judge stopped. The district judge explained, "we're not here to twist anybody's arms or to make people do something that they don't believe is accurate or truthful or whatever else." *Id.* at 6. The district judge made sure that Grier was ready to move forward:

> THE COURT:    . . . You know, you can go forward today, you can plead guilty, or you can tell me, Judge, I just don't want to do it, in which case I just stop right now and, you know, we'll be done. So no pressure.
>
> THE DEFENDANT:    Guilty, Your Honor.
>
> THE COURT:    Well, you want to go ahead, is what you're saying? You're surprising me a little bit. Is that what you want to do?
>
> THE DEFENDANT:    Yeah.

*Id.* at 7–8.

The district judge also engaged Grier in a lengthy exchange to ensure that he had sufficient time to review the revised agreement:

> THE COURT:    Mr. Grier, there's a statement right before your signature. Here's what it says:
>
> I've read this agreement including the sealed supplement and carefully reviewed every part of it. I understand it and I voluntarily agree to it. Specifically I

10

have reviewed the factual and advisory guideline stipulation and I do not wish to change any part of it.

Is that your statement, sir? I know you didn't write the statement. Somebody else wrote it. But do you adopt it as yours?

THE DEFENDANT:      Yes.

*Id.* at 10–11.

When it appeared that Grier needed more time to review the revised agreement with Mr. Purpura, the district judge gave him that time. *Id.* at 11–12. Grier confirmed that he "ha[d] an opportunity to read and discuss the plea agreement with [his] lawyer" and had "fully reviewed each and every term of the plea agreement with [his] lawyer." *Id.* at 12.

### 3.    The Plea Was Knowing and Intelligent.

At every stage, the district judge also took great care to ensure that Grier's guilty plea was knowing and intelligent. The district judge reviewed the terms of the revised agreement, the elements and maximum penalties of the RICO conspiracy, the Guidelines, and the rights that Grier was waiving. *Id.* at 12–26. While doing so, the district judge repeated questions whenever Grier asked. *See, e.g.*, *id.* at 18–19. When Grier had questions of his own, the district judge allowed him to speak with Mr. Purpura before moving on. *See, e.g.*, *id.* at 14, 21.

Sometimes, the district judge addressed Grier's questions directly. For example, Grier did not know that the district judge could reject the Government's

recommendation. *Id.* at 14–15. The district judge eased Grier's concerns by allowing him to withdraw his guilty plea in that situation. *Id.*

The district judge also informed Grier that he waived his right to appeal his conviction:

> THE COURT:    Do you understand that by entering into the plea agreement in this case if your guilty plea is accepted you will have waived or given up your right to appeal your conviction and your sentence?
>
> THE DEFENDANT:    Yes.

*Id.* at 22.

After these exchanges, the district judge found Grier guilty of the RICO conspiracy, *id.* at 31, and the district judge sentenced him to 15 years concurrent to his state sentence, ECF No. 1062 (Judgment). Grier timely appealed.

## ARGUMENT

I.   **THIS APPEAL SHOULD BE DISMISSED BECAUSE GRIER WAIVED THE RIGHT TO APPEAL HIS CONVICTION BY PLEADING GUILTY.**

### A.    The Appeal Waiver was Knowing and Voluntary.

The Court should dismiss the appeal because Grier knowingly and voluntarily waived the right to appeal.

A defendant's waiver of the right to appeal a conviction or sentence is valid and enforceable if such waiver was knowingly and voluntarily made. *See United States v. Blick*, 408 F.3d 162, 168–71 (4th Cir. 2005); *United States v. General*,

278 F.3d 389, 399–401 (4th Cir. 2002); *United States v. Attar*, 38 F.3d 727, 731 (4th Cir. 1994). This Court enforces an appeal waiver if "the issue sought to be appealed falls within the scope of the waiver." *United States v. Cohen*, 459 F.3d 490, 494 (4th Cir. 2006). If a party files an appeal despite a knowing and voluntary waiver of that party's right to appeal, the proper remedy is dismissal. *See United States v. Marin*, 961 F.2d 493, 496 (4th Cir. 1992).

Here, the record makes clear that Grier entered into a plea agreement with the government that contained a valid appeal waiver provision, and that he did so knowingly and voluntarily, curtailing the right to file this appeal.

The plea agreement described the appeal waiver in direct, unambiguous language—telling Grier that he knowingly and expressly waived all rights to appeal his conviction for any reason. ECF No. 1059, at 6 (Plea Agreement). This provision is like others this Court has approved. *See United States v. Linder*, 552 F.3d 391, 396–97 (4th Cir. 2009); *United States v. Linder*, 174 F. App'x 174, 175 (4th Cir. 2006). This waiver had no exceptions or carve outs.

At the guilty plea hearing, the district judge reviewed all salient aspects of the plea agreement with Grier and specifically drew his attention to the waiver. ECF No. 1134, at 22 (Guilty Plea Transcript). Grier confirmed on the record that he had read the agreement, had carefully reviewed every part of it with defense counsel, had understood it, and was entering into that waiver provision voluntarily. *Id.* at 10–11.

13

Grier did not indicate or request that the plea was conditional by reserving the right to appeal any of the issues now presented. Nor did the Government agree to a conditional plea. This is more than sufficient to show a knowing and voluntary waiver.

This Court, evaluating the totality of circumstances, concluded that an appeal waiver was knowingly and intelligently made where the district court, like here, specifically questioned the defendant about the appeal waiver during the plea colloquy. *See Blick*, 408 F.3d at 169. Further still, this Court has enforced the appeal waiver even where the district court did not "mention the appellate waiver provision or inquire specifically into whether [the defendant] understood the significance of the waiver provision." *See General*, 278 F.3d at 400–01. As the record here goes much further than *General*, it confirms that Grier's waiver was knowing and intelligent.

Additionally, Grier was represented by competent counsel when entering the guilty plea. *See Attar*, 38 F.3d at 731 (noting the significance of being represented during a guilty plea). Grier wanted Mr. Purpura to represent him during the guilty plea and sentencing. ECF No. 1134, at 2 (Guilty Plea Transcript). Mr. Purpura answered whatever questions Grier had about the agreement. *Id.* at 14, 21. Grier, during the guilty plea colloquy, acknowledged that he was satisfied with Mr. Purpura. *Id.* at 9. At no time during the plea colloquy did Grier or Mr. Purpura

indicate a lack of understanding about the scope of the appeal waiver or any other part of the plea agreement. On this record, there is no indication that Grier's waiver of the right to appeal the conviction was anything but knowing and voluntary.

Considering both the Rule 11 colloquy and the plea agreement's appeal waiver, Grier knowingly and voluntarily relinquished the right to bring this appeal. As such, this appeal should be dismissed.

**B.      The Issues in This Appeal Do Not Fall Within a Valid Exception.**

**1.      Grier Knew About the Plea Agreement Issue and Pled Guilty Anyway, Waiving Any Appeal.**

This appeal does not fall within any recognized limit that can be placed on Grier's otherwise valid appeal waiver.

Grier argues that the plea agreement is "void" because the Government emailed the original offer to Mr. Purpura. *See* Appellant's February Br. at 20; Appellant's March Br. at 4. This claim does not fall within any appeal waiver exceptions because Grier knew about the claimed error and chose not to raise it. He waived it by pleading guilty.

Ordinarily, "[w]hen a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." *United States v. Moussaoui*, 591 F.3d 263, 279 (4th Cir. 2010) (citing *United States v. Bundy*, 392 F.3d 641, 644 (4th Cir. 2004)). "[W]hen a criminal defendant enters a guilty plea, he may not thereafter raise independent claims relating to the deprivation of

constitutional rights that occurred prior to the entry of the guilty plea." *Blackledge v. Perry*, 417 U.S. 21, 29–30 (1974).

One exception is that the defendant may challenge the "inadequacy of the plea." *Bundy*, 392 F.3d at 644. But he waives most claims that he knew about before pleading guilty. The guilty plea "renders irrelevant—and thereby prevents the defendant from appealing—the constitutionality of case-related government conduct that takes place before the plea is entered." *Class v. United States*, 138 S. Ct. 798, 805 (2018). It also "relinquishes any claim that would contradict the admissions necessarily made upon entry of a voluntary plea of guilty." *Id.* (citation and internal quotation marks omitted).

Here, Mr. Purpura received the original offer after being removed as appointed counsel but before being appointed as standby counsel. *See* ECF No. 1137, at 8 (*Lafler/Frye* Transcript). This was explained in Grier's presence. *See id.* Grier also acknowledges that he thought the sequence was illegal. Yet, he said nothing about it so that he could later raise the issue on appeal. *See* Appellant's February Br. at 20. Grier waived the claim by knowing about it and pleading guilty anyway.

The claim also contradicts his sworn statements during the guilty plea hearing that he accepted the plea agreement knowingly and voluntarily (despite knowing

about the sequence of events), and that he was satisfied with Mr. Purpura.[1]  *See* ECF No. 1134, at 9–10 (Guilty Plea Transcript).

Given these circumstances, the appeal waiver covers his voided plea agreement claim, and the claim should be dismissed.[2]

### 2.    Grier Also Knew About the Discovery Issue and Pled Guilty Anyway, Waiving Any Appeal.

Grier also argues that the magistrate judge erred by requiring him to review discovery through standby counsel.  *See* Appellant's February Br. at 12; Appellant's March Br. at 2.  This, too, is foreclosed by the fact that Grier knew about it and pled guilty anyway.

And this type of claim does not otherwise fall within a recognized appeal waiver exception.  For example, Grier was not sentenced to a term of imprisonment that exceeds the maximum penalty provided by statute, nor does he contend that the

---

[1] His stance also raises other concerns.  For one thing, standby counsel is designed, in part, to circumvent the "gotcha" argument that Grier now raises.  "The right of self-representation is not a license to abuse the dignity of the courtroom." *Faretta v. California*, 422 U.S. 806, 834 n. 46 (1975).  For another thing, a defendant "cannot complain of error which he himself has invited."  *United States v. Lespier*, 725 F.3d 437, 450 (4th Cir. 2013) (citation omitted).

[2] Grier paints a very different factual picture than the record.  He describes that he was "bomb shelled" by the revised agreement, that he refused to speak with Mr. Purpura, and that he was forced to plead guilty.  *See* Appellant's February Br. at 5–6.  In reality, Grier personally negotiated the revised agreement.  He asked for Mr. Purpura to represent him during the guilty plea, and he confirmed under oath that (1) he was satisfied with Mr. Purpura and (2) no one threatened or forced him to plead guilty.

sentence was based on any impermissible factor, such as race. *See Attar*, 38 F.3d at 732; *Marin*, 961 F.2d at 496 (finding that a waiver was enforceable where the defendant was contesting the application of a sentencing guideline factor, and where he was not alleging that the sentence exceeded the maximum possible penalty or that the sentence was based on an impermissible factor). Rather, by filing this appeal, Grier simply chooses to selectively ignore a plea-agreement provision he has deemed disadvantageous to him.

Accordingly, the government respectfully requests that the Court dismiss this appeal. Allowing Grier to appeal these issues would contravene the very purpose of appeal waivers and would "eliminate the chief virtues of the plea system—speed, economy and finality." *United States v. Wiggins*, 905 F.2d 51, 53 (4th Cir. 1990) (quoting *Blackledge v. Allison*, 431 U.S. 63, 71 (1977)).

## II.   EVEN ON THE MERITS, THE GUILTY PLEA ISSUE LACKS MERIT.

### A.   Standard of Review

Because Grier did not challenge the plea offer sequence below, this Court reviews for plain error. Under this standard, the defendant must show that (1) the district court erred, (2) the error was plain, and (3) the error affected the defendant's substantial rights. *United States v. Olum*, 65 F.4th 714, 721 (4th Cir. 2023) (citation omitted). Even then, this Court corrects the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation

omitted).

**B.    Grier Cannot Meet the First Two Plain Error Prongs.**

Even on the merits, the voided plea agreement argument should fail.  Again, Grier argues that the plea agreement is "void" because Mr. Purpura received the original offer during the brief period of time when he was neither appointed nor standby counsel.  This lacks merit for several reasons.

First, Grier cannot show error, let alone a plain one.

He ignores that, because he was incarcerated, an attorney remained the Government's best option to communicate a plea offer to him.  There were few other alternatives.  And it supports why Mr. Purpura was eventually appointed as standby counsel.  Standby counsel "assists the *pro se* defendant in overcoming routine procedural or evidentiary obstacles to the completion of some specific task," like hearing about one offer and negotiating another, more favorable offer.  *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984).  Standby counsel also helps the defendant "overcome[e] routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals."  *Id.* at 184.  This is so "even in the unlikely event that it somewhat undermines the *pro se* defendant's appearance of control over his own defense."  *Id.*  To illustrate this point further, Grier had to wait until he saw the Government in person in open court to communicate his counteroffer.  Mr. Purpura was a far more efficient go-between.

19

In addition, Mr. Purpura did nothing during that intervening time to undermine Grier's right to self-representation. Mr. Purpura simply received the original offer and reviewed it with Grier. Grier took the reins from there.

## C.    Grier Cannot Meet the Remaining Plain Error Prongs.

Second, Grier cannot show that the sequence of events affected his substantial rights, or the fairness, integrity, or public reputation of judicial proceedings.

Grier did not plead guilty under the original offer. He rejected that offer and negotiated his own agreement without Mr. Purpura's help. *See* ECF No. 1137, at 25–26 (*Lafler*/*Frye* Transcript). Because the revised agreement is the operative document, a defect with the original offer has no bearing on the guilty plea.[3]

Any defect was cured by the well-developed record. During the *Lafler*/*Frye* hearing, the Government walked Grier through terms of the original offer. As the defendant need only "know about" an offer before rejecting it, this cured any defect with how Grier first heard about it. A *Lafler*/*Frye* inquiry is "precisely concerned with ensuring the defendant knows of all plea offers." *United States v. Draper*,

---

[3] Along those same lines, while the Fourth Circuit generally requires a written plea agreement, the Rules do not. *See United States v. McQueen*, 108 F.3d 64, 66 (4th Cir. 1997). Rule 11(b) requires only that the guilty plea be knowing, voluntary, and supported by fact. *See* Federal Rule of Criminal Procedure 11(b). Rule 11(c) requires only that the terms of an agreement be disclosed in open court. *See* Federal Rule of Criminal Procedure 11(c). Because the district judge complied with Rules 11(b) and (c), and Grier identifies no breach of the revised agreement, his guilty plea remains valid absent any alleged defect with the original offer.

882 F.3d 210, 217 (5th Cir. 2018).

Plus, the revised agreement was a clean break from the original offer. Grier rejected the original offer and negotiated the revised agreement himself. *See* ECF No. 1137, at 25–26 (*Lafler*/*Frye* Transcript). During the guilty plea hearing, the district judge reviewed the revised agreement's terms with Grier in open court. *See* ECF No. 1134, at 12–26 (Guilty Plea Transcript). The district judge gave Grier ample time to read the revised agreement. *See id.* at 11–12. The original offer never came up again. These steps ensured that Grier properly received, knew about, and understood the revised agreement before pleading guilty.

Finally, Grier cannot show how the sequence of events prejudiced him or affected the outcome in anyway. He was made fully aware of the original offer's terms during the *Lafler*/*Frye* hearing. *See* ECF No. 1137, at 9, 11 (*Lafler*/*Frye* Transcript). He rejected the original offer and accepted more favorable terms instead. *See id.* at 25–26.

Given these circumstances, he can meet no prong of the plain error analysis, and his claim should fail.

## III.    EVEN ON THE MERITS, THE DISCOVERY ISSUE LACKS MERIT.

### A.    Standard of Review

This Court reviews the denial of a discovery request for abuse of discretion. *United States v. Fowler*, 932 F.2d 306, 311 (4th Cir. 1991). An abuse of discretion

occurs when the district court relies on an incorrect legal standard or clearly erroneous facts. *United States v. Rand*, 835 F.3d 451, 462 (4th Cir. 2016) (citing *United States v. Richardson*, 607 F.3d 357, 368 (4th Cir. 2010)).

Relatedly, the Court reviews the purported denial of a defendant's right to self-representation *de novo*. *United States v. Bush*, 404 F.3d 263, 270 (4th Cir. 2005).

**B.    The District Court Properly Channeled Discovery Through Standby Counsel.**

Grier was a convicted murder who, at the time, was accused of committing several violent acts and was serving a life sentence in state prison. Under those circumstances, the magistrate judge appropriately cited safety concerns for denying Grier personal copies of the discovery. This is so for numerous reasons.

First, the decision was legally sound. There is no general constitutional right to discovery in a criminal case. *Gray v. Netherland*, 518 U.S. 152, 168 (1996) (citing *Weatherford v. Bursey*, 429 U.S. 545, 560 (1977)). And the danger associated with allowing defendants to maintain criminal discovery materials while incarcerated is well-documented. In *United States v. Hall*, 506 F. App'x 245 (4th Cir. 2013), for example, this Court recounted how criminal discovery was given to Maryland defense attorneys under a discovery agreement that physical copies not be shared with their clients. *Id.* at 247. One defense attorney violated the agreement and gave his client an investigative report of a witness interview. *Id.* That interview was then

widely circulated around a Baltimore neighborhood, and it was even posted on a telephone pole for all to see. *Id.* As a result, the witness was targeted and brutally murdered. *Id.*

As the Ninth Circuit has said, a criminal defendant's right to access discovery "must be balanced against the legitimate security needs or resource constraints of the prison." *United States v. Sarno*, 73 F.3d 1470, 1491 (9th Cir. 1995).

As a result, this Court and the District of Maryland have routinely endorsed limiting whether and how a defendant may have personal copies of discovery. *See, e.g.*, *United States v. Gaver*, 815 F. App'x 700, 702 (4th Cir. 2020) (rejecting the defendant's claim that he should have received personal copies of discovery); *Johnson v. United States*, 2019 WL 266210, at *5 (D. Md. Jan. 18, 2019) (surmising that defense counsel could not provide the defendant personal copies of discovery "presumably for security reasons"); *Escamilla v. United States*, 2017 WL 1382303, at *2 (D. Md. Apr. 18, 2017) (explaining that defense counsel was "bound by the discovery agreement not to provide [the defendant] his own copy of the discovery"). The denial here considered those concerns and followed that practice.

Second, the magistrate judge followed a local standing order that counseled against giving incarcerated defendants personal copies of discovery. Since 2020, the District of Maryland has operated under Standing Order 2020-01, which provides that physical copies of discovery cannot be sent directly to an incarcerated defendant

23

absent Government consent or Court order. *See* Rule 2.b of *In re Discovery in Criminal Cases*, Standing Order 2020-01, District of Maryland (available at: https://www.mdd.uscourts.gov/sites/mdd/files/2020-01.pdf (last accessed June 5, 2023)).

When Grier renewed his discovery request after the *Faretta* hearing, the standing order was in effect. The Government placed its security concerns on the record: "Obviously, there's a lot of witnesses and safety concerns in terms of that." ECF No. 1148, at 51(*Faretta* Transcript). And the magistrate judge referred to the standing order's policy when denying the request: "It is the policy of this Court not to permit discovery files . . . in facilities of incarceration." ECF No. 1137, at 17 (*Lafler*/*Frye* Transcript). The magistrate judge did not err by following standard court practice.

### C. The Law and Record Do Not Support Grier's Opposing Arguments.

Grier's opposing arguments do not change the analysis. He argues that the magistrate judge committed misconduct by requiring him to review discovery through standby counsel. *See* Appellant's February Br. at 4; Appellant's March Br. at 2. Grier also claims that the magistrate judge violated his Sixth Amendment right to self-representation. *See* Appellant's February Br. at 4. Neither of these claims have merit.

Nothing entitles Grier to personal copies of discovery. Rather, when a defendant represents himself, he "must have the means of presenting his best defense" and the "time and facilities for investigation and for the production of evidence." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942). The record supports just that.

The record here shows that Grier had all the appropriate means, time, and facilities. Courts "may—even over objection by the accused—appoint a 'standby counsel.'" *Faretta*, 422 U.S. at 834 n.46. Courts also routinely order discovery to flow through standby counsel, like the magistrate judge did below. *See, e.g.*, *United States v. Green*, 2020 WL 5877893, at *1 n.1 (E.D. Va. Oct. 2, 2020) (describing having ordered standby counsel to review discovery with the defendant at the federal courthouse); *United States v. Boker*, 2017 WL 1549922, at *2 (W.D.N.C. Apr. 28, 2017) (describing order requiring standby counsel to maintain discovery that the defendant could not keep in his cell).

Moreover, to make discovery more accessible to him, the magistrate judge tried to move Grier closer to the federal courthouse. *See* ECF No. 1137, at 17–18 (*Lafler*/*Frye* Transcript). When standby counsel is involved, this Court has approved similar efforts to make discovery more accessible. *See, e.g.*, *United States v. Belk*, 2022 WL 17849372, at *3 (4th Cir. Dec. 22, 2022) (running discovery through standby counsel and postponing proceedings for additional time to review

discovery). Other courts have done the same. *See, e.g.*, *United States v. Bisong*, 645 F.3d 384, 397 (D.C. Cir. 2011) (running discovery through standby counsel and postponing proceedings for additional time to review discovery)

Grier, in contrast, rebuffed efforts to make discovery more accessible. *See* ECF No. 1137, at 18 (*Lafler*/*Frye* Transcript). The magistrate judge wanted to move Grier anyway: "I understand that you may have reasons to want to go back to [state custody] but you have to weigh whatever those reasons are against your ability to prepare for this case, which is very serious." *Id.* at 21. Grier, not the magistrate judge, undermined his access.

Finally, the record lacks any indication that the magistrate judge tricked or misled Grier. The magistrate judge conducted a thorough, proper *Faretta* hearing before letting Grier represent himself. When the Government took issue with giving Grier personal copies of the discovery, the magistrate judge simply followed the district court's standing order. The magistrate judge also took immediate steps to make discovery as accessible as possible. At the same time, the magistrate judge gave no advanced assurances to Grier about the discovery.

Grier also did not complain about running discovery through standby counsel. None of his reactions evidenced a disagreement. When the magistrate judge described the discovery arrangement, Grier did not object. He instead negotiated a more favorable plea offer. During the guilty plea hearing, Grier requested that

Mr. Purpura be reinstated as his counsel. He then told the district judge, under oath, that he was satisfied with Mr. Purpura's representation.

### D. Grier Cannot Show How Any Error Affected the Proceedings.

Even then, Grier cannot show prejudice. In his informal opening briefs, he identifies no way in which reviewing discovery through standby counsel prejudiced him in any fashion. The failure to do so waives that argument.

Even if preserved, the record undermines any prejudice claim. During the *Faretta* hearing, Grier raised no specific issue with the discovery. He cited no evidence that he wanted to see, and he identified no evidence that he believed was late, wrong, or missing. Although he asserted his innocence, he offered no explanation for why his own review would better than an attorney's.

Grier did not even review discovery during that relevant period. Only an hour separated the *Lafler*/*Frye* hearing (where the magistrate judge ordered discovery to flow through standby counsel) and the guilty plea hearing (where Grier waived his right to appeal any discovery issues). On top of that, Grier made clear during the *Faretta* hearing that he wanted to avoid collusion. He accomplished that goal by negotiating his own plea agreement. He also secured the sentence that he bargained for. There simply is no prejudice on that record.

## CONCLUSION

For the reasons above, this Court should dismiss the appeal, or, in the alternative, affirm the judgment on the merits.

Respectfully submitted,

Erek L. Barron
United States Attorney

_____/s/_____
Brandon K. Moore
Patricia C. McLane
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 5, 2023, I mailed a copy of the foregoing

to:

> Richard Grier, #474750
> North Branch Correctional Institution
> 14100 McMullen Highway, S.W.
> Cumberland, Maryland 21502

                                    /s/
                        _____
                        Brandon K. Moore
                        Assistant United States Attorney